IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**CHELSEA JADE KNIGHTON**                                            **Plaintiff**

**v.**                                                  **No: 3:22-cv-056-MPM-RP**

**BENTON COUNTY, MISSISSIPPI;**
**KATHY GRAVES, officially and individually;**
**ROBERT GOOLSBY, individually;**
**STEVE BELEW, officially and individually; and**
**JOHN DOES 1-10**                                                  **Defendants**

## ORDER

This cause comes before the Court on Defendants Kathy Graves, Benton County, Mississippi, Robert Goolsby, and Steve Belew's Motions for Summary Judgment [135, 138, 140] under Federal Rule of Civil Procedure 56. Plaintiff Chelsea Jade Knighton has responded in opposition to the motions [152]. The Court, having reviewed the record and carefully considered the applicable law, is now prepared to rule.

### FACTUAL BACKGROUND

We must, once again, revisit the outlandish events underlying the Benton County Incident. The events that took place on February 2, 2021, spawn from a tumultuous familial relationship between mother-in-law, Kathy Graves, and now ex-daughter-in-law, Chelsea Knighton. However, the facts of this case could not be more incongruent. While the parties squabble over infidelity and immaterial past events, only a few major incidents determine the outcome of this dispute.

On the morning of February 2, 2021, Kathy Graves received a phone call that her son, Robert Graves, was seen passed out in his car at a local gas station in Ashland, Mississippi. As any concerned mother would do, Kathy abruptly left work and raced over to the gas station. With her

son nowhere to be found, Kathy drove to Robert and Ms. Knighton's home hoping to find him there. Kathy knocked on the door but there was no answer. She then began beating on the door when her son finally came out with Ms. Knighton following closely behind, allegedly cussing and screaming at him. Kathy told her son to get in the car.

Kathy began driving toward the Ashland square and saw Mississippi Department of Corrections Officer Steve Belew's car parked outside of his office. As the Benton County Circuit Clerk for the past 18 years, Kathy knew Officer Belew dealt with frequent drug offenders as a probation officer, so she went to him for help. Officer Belew brought Robert into his office while Kathy remained in the waiting room. It was here that Robert admitted to using drugs and told Officer Belew that his wife Ms. Knighton, also under the influence of drugs, was passed out in the house with the children. Out of concern for the children, Officer Belew accompanied Robert and Kathy back to their home. Here the facts diverge.

The defendants' recollection of the events that follow are fervently disputed by Ms. Knighton. Kathy maintains that when they returned to the home, Robert began beating on the door trying to get Ms. Knighton to answer. They peered inside a window and saw Ms. Knighton passed out on the couch. She eventually woke and crawled on her hands and knees to open the door. Once inside, Robert and Ms. Knighton began arguing and Kathy went to tend the children, specifically the baby who was asleep. Out of concern that the baby might have been exposed to drugs, Officer Belew retrieved a urine test from his car but informed Ms. Knighton that she didn't have to take the test. To the contrary, Robert forced Ms. Knighton into a bathroom to retrieve a urine sample, but she could not use the bathroom. Officer Belew then produced an expired mouth swab drug test which Ms. Knighton agreed to take. According to Officer Belew, the test was positive for opiates.

Officer Belew then asked Ms. Knighton if she had taken opiates. Robert and Ms. Knighton both admitted to using fentanyl.

Ms. Knighton has a different accounting of the facts. She maintains that on the morning of February 2, 2021, she was at home, awake and making coffee when Kathy, Robert, and Officer Belew arrived. Kathy and Officer Belew demanded that she take a drug test, but she told them to get out of her house. According to Ms. Knighton, Officer Belew aggressively forced her into a bathroom and stood over her while she tried to provide a urine sample but was unable to do so. He then escorted Ms. Knighton to the couch in the living room where he pinned her down with his knee, grabbed her face, pried open her mouth and forced an oral swab into her mouth. Although Officer Belew said the test was positive for opiates, he did not show Ms. Knighton the test and it was later determined the test kit used was expired. Ms. Knighton does not remember exactly but either Officer Belew or Kathy told her that she would be arrested, and they left with both children.

Then, according to Ms. Knighton, Sheriff Robert Goolsby arrived at the home upon Kathy's request. Officer Belew informed Sheriff Goolsby that Ms. Knighton tested positive for opiates and admitted to using fentanyl. Based on this information, Sheriff Goolsby signed an affidavit swearing that Robert and Ms. Knighton had used drugs in the presence of their children and arrested Ms. Knighton. Sheriff Goolsby did not personally witness Ms. Knighton using drugs in the presence of her children, nor did he see the positive drug test. Ms. Knighton was tested multiple times after her arrest and never tested positive for drugs in a valid test. Nevertheless, based on the defendants' allegations, Ms. Knighton lost custody of her children for over a year and spent over a week in jail until she was released after the charges against her were dropped.

3

**STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022) (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

At the summary judgment stage, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. If a moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc City Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "If the nonmoving party

4

fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.

## DISCUSSION

Ms. Knighton brings this action against the defendants claiming multiple violations of her Fourth and Fourteenth Amendment rights, along with various state law claims. Specifically, Ms. Knighton alleges that she was deprived of her Fourth Amendment right against unlawful seizure, excessive force, and false imprisonment when Officer Belew forcibly administered an expired drug test without reasonable suspicion or probable cause and when Sheriff Goolsby unlawfully arrested her without a warrant after falsifying an affidavit. Ms. Knighton also alleges violations of her Fourteenth Amendment rights against abuse of process, fabrication of evidence, and her right to familial association. She claims that the defendants conspired together under the guise of the law to perform the acts committed against her.

The defendants, however, contend that it was in fact Ms. Knighton's husband, Robert Graves, who administered the drug test, and that Officer Belew never put his hands on Ms. Knighton. Officer Belew claims that the drug test was positive for opiates and that both Ms. Knighton and her husband admitted to using fentanyl. Sheriff Goolsby then arrived at the home and arrested Ms. Knighton. He claims that she admitted to using drugs and appeared to be under the influence of drugs. Based on these findings, Sheriff Goolsby signed an affidavit swearing under oath that Ms. Knighton used drugs in the presence of her children. She was subsequently charged with child neglect and lost custody of her children.

It is evident that the parties fundamentally disagree on the material facts of this case. The record lacks undisputed evidence, and the matter presents a classic "he said, she said" scenario, with the majority of evidence consisting solely of the parties' deposition testimony. There are no

5

photographs or video footage from the events that took place on February 2, 2021, and the only arguably credible evidence—a purportedly positive but expired drug test—cannot be corroborated by any witness and has since been discarded. Given these circumstances, the Court cannot reasonably adjudicate the matter when the most essential facts remain in dispute.

At this stage in the proceedings, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. Likewise, "the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. Thus, the Court finds that it would be reasonable, based on Ms. Knighton's allegations, for a jury to return a verdict in her favor. Therefore, the Court must deny the defendants' motions for summary judgment as the resolution of these disputed facts is best left for the trier of fact.

### CONCLUSION

For the reasons stated above,

**IT IS, THEREFORE, ORDERED** that Defendants' Motions for Summary Judgment [135, 138, 140] are **DENIED** as there remain genuine issues of material fact that should only be resolved by the jury.

SO ORDERED this 26th day of June, 2025.

 /s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI